IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW M.L. McCAIN, # R21553, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-300-JPG |
| ) | |
| MICHAEL P. ATCHERSON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, who is currently incarcerated at Menard Correctional Center ("Menard"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 35-year sentence for murder. His claims arose during his incarceration at Menard. Plaintiff claims that the nineteen defendants violated his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments by repeatedly failing to protect him from other inmates and confiscating his personal property (Doc. 1). Plaintiff seeks compensatory and punitive damages (Doc. 1, p. 19). He also seeks a temporary restraining order ("TRO") and preliminary injunction to protect him from future harm (Doc. 2).

Specifically, Plaintiff alleges that he is a former member of the Latin Kings gang (Doc. 1, p. 4). In 2005, Plaintiff was "irradicated"[1] from the gang after the Latin Kings identified him as being homosexual. Until his transfer to Menard, Plaintiff successfully avoided contact with gang members. Soon after his transfer, Plaintiff ran into a known Latin King gang leader, who recognized Plaintiff and divulged his former affiliation to other inmate gang members (Doc. 1, pp. 4, 6). Plaintiff's fellow inmates now view him as a traitor, an informant, and a homosexual

---

[1] Plaintiff does not define this term. Construing the complaint liberally, as this Court is required to do at this stage, the Court assumes that Plaintiff was uninvited from participation in the gang.

(Doc. 1, p. 4).  Subsequent to this encounter, Plaintiff endured numerous unwanted sexual advances, indirect and direct threats of harm, and actual physical attacks by suspected gang members and their allies, including Plaintiff's own cellmates (Doc. 1, p. 5).

Plaintiff alleges that he is not safe at Menard.  Since his transfer on November 15, 2012, Plaintiff has been attacked by inmates on four occasions, including November 21, 2012, January 4, 2013, January 15, 2013, and March 8, 2013 (Doc. 1, p. 6).  In each attack, the perpetrator was a cellmate.  In two incidents, Plaintiff was in protective custody.

On November 21, 2012, a cellmate attacked Plaintiff, by choking him and ripping his clothing (Doc. 1, pp. 7-8).  Prison officials did not intervene or assist Plaintiff.  They failed to issue an incident report and left Plaintiff in the cell with the perpetrator after the attack.  Plaintiff was placed in protective custody the same day.  He asked to stay there.  His request was ultimately denied, and Plaintiff was transferred out of protective custody (Doc. 1, p. 9).

On January 4 and 15, 2013, Plaintiff was again assaulted, this time by a different cellmate (Doc. 1, pp. 9-10).  The cellmate tried to take Plaintiff's commissary and then attacked him twice, cutting Plaintiff's left temple and scarring the left side of his forehead.  According to Plaintiff, Defendants did nothing to prevent the attack or assist him.  Plaintiff's subsequent grievances, including emergency grievances requesting long-term placement in protective custody, were ignored or denied (Doc. 1, p. 11).

On March 8, 2013, as Plaintiff was preparing to file this lawsuit, a cellmate stabbed him in the chest with a pencil and busted his lip during an attack (Doc. 1, p. 13).  In response, Plaintiff was placed in investigatory segregation, where he remained on the date he filed this lawsuit (Doc. 1, p. 14).  Plaintiff claims that he was denied adequate medical treatment for the stab wound when he was provided with antibiotic ointment and a band-aid.

As to each defendant, Plaintiff makes the following allegations in his complaint:

1. **Defendant Herrington:** Plaintiff alleges that he complained of gang threats and sexual advances directly to this defendant, who took no action. Plaintiff also sent this defendant an emergency grievance requesting long-term placement in protective custody, along with supporting documentation. Defendant Herrington denied Plaintiff's request for protective custody (Doc. 1, pp. 6, 12);

2. **Defendant Cowan:** Plaintiff alleges that he repeatedly complained of gang threats and sexual advances directly to this defendant, both verbally and in writing. Defendant Cowan interviewed Plaintiff regarding his request for protective custody in the gallery, within earshot of the inmates Plaintiff was seeking to avoid. Defendant Cowan took no meaningful action, and Plaintiff continued to get attacked (Doc. 1, pp. 5, 8, 12);

3. **Defendant Laurance:** Plaintiff alleges that he complained of gang threats and sexual advances directly to this defendant, who took no meaningful action. Plaintiff sent Defendant Laurance a letter explaining his safety concerns in detail. Defendant Laurance admitted receiving grievances from Plaintiff, but did nothing to help Plaintiff secure placement in protective custody (Doc. 1, pp. 5, 12);

4. **Defendant Godinez:** Plaintiff alleges that he denied Plaintiff's request for placement in protective custody, left Plaintiff in the cell with his perpetrator after Plaintiff reported the assault by his cellmate, failed to investigate the attack(s), and offered no help to Plaintiff (Doc. 1, p. 11);

5. **Defendant Anderson:** Plaintiff alleges that he told this defendant "everything," reporting the details of the assaults and the events leading up to them. Defendant Anderson nevertheless denied his request for protective custody (Doc. 1, pp. 6, 11);

6. **Defendant Dunn:** Plaintiff asked this defendant for protective custody. He submitted a specific written request to be separated from one of his perpetrators before an attack, noting that the cellmate was getting "more and more belligerent." Defendant Dunn ignored the request, and Plaintiff was attacked (Doc. 1, pp. 6-7);

7. **Defendant Joy and Unknown Party 2 (John Doe 1):** Plaintiff claims Defendant Joy responded to Plaintiff's calls for help during an attack by telling him to "shut up" and "shut the f*** up." Both Defendants then refused to acknowledge Plaintiff's complaints regarding the assault. Defendant Unknown Party 2 (John Doe 1) told Plaintiff he did not care about the attack and then "pushed Plaintiff onto 6 Gallery" without issuing an incident report (Doc. 1, pp. 6, 8);

8. **Defendants Getz and Mulholland:** Plaintiff alleges that both defendants "did nothing" after hearing Plaintiff's report of the first attack. In addition, in

3

response to Plaintiff's report regarding the second attack, Defendant Getz left Plaintiff in the cell with his perpetrator (Doc. 1, pp. 5, 10);

9. **Defendant Henrich:** Plaintiff alleges that this defendant threatened Plaintiff with a "shake-down" (i.e., cell search) in response to Plaintiff's complaints regarding his stab wound and busted lip (Doc. 1, p. 12);

10. **Defendant Anthony:** This defendant allegedly refused to accept evidence of Plaintiff's assault and instead wrote him a ticket and placed him in investigatory segregation (Doc. 1, p. 18);

11. **Unknown Party 1 (Jane Doe 1):** Plaintiff alleges that this defendant, who was an internal affairs officer, met with Plaintiff on December 3, 2012, following the first attack. She focused on his affiliation with the Latin Kings, but did not consider his interactions to be threats. She denied Plaintiff's request for protective custody, later accusing Plaintiff of lying about his need for it. She did not investigate his claims with any sincerity (Doc. 1, pp. 7-8);

12. **Unknown Party 3 (C/O John Doe 2):** This defendant refused to accept evidence of Plaintiff's assault (Doc. 1, p. 18);

13. **Unknown Parties 4 and 5 (Nurse Jane Doe 2 and Doctor John Doe 3):** Plaintiff alleges that Unknown Party 4 (Nurse Jane Doe 2) failed to properly clean his stab wound after claiming that it was scabbed over. She provided Plaintiff with antibiotic cream and a band-aid. Plaintiff named Unknown Party 5 (Doctor John Doe 3) for the same reason (Doc. 1, p. 19.);

14. **Defendant Atcherson:** This defendant reviewed and signed off on the denial of Plaintiff's first request for protective custody (Doc. 1, p. 17);

15. **Defendant Coffeey:** Plaintiff suspected this defendant of conducting an improper "shake-down" of Plaintiff's cell, in which the defendant stole Plaintiff's toothpaste and planted it as contraband on Plaintiff's cellmate (Doc. 1, pp. 10-11, 18); and

16. **Defendant Phelps:** Plaintiff alleges that this defendant confiscated evidence to this lawsuit and "tried to catch [Plaintiff] in a lie" during his recent investigation of the stabbing (Doc. 1, p. 18).

Plaintiff no longer believes that Menard can offer him a safe living environment (Doc. 1, p. 15). He claims that an inmate who was in protective custody at Menard was recently killed by another inmate. Plaintiff alleges that two of his attacks occurred while he was in protective custody. A gang member, who was in protective custody at the time, recently threatened

4

Plaintiff, saying, "Matt you['re] a b****.  I hope you get approved.  I'm gonna show you you['re] a b****" (Doc. 1, p. 13).  Plaintiff now seeks a prison transfer (Doc. 1, p. 15).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

According to 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint.  Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable Eighth Amendment claim against the following defendants, based on their failure to protect Plaintiff from repeated inmate attacks: Defendants Herrington, Cowan, Laurance, Godinez, Anderson, Dunn, Joy, Getz, Mulholland, Henrich, Anthony, Unknown Party 1 (Jane Doe 1), and Unknown Party 2 (John Doe 1) (Count 1).

However, Plaintiff has failed to state an actionable Eighth Amendment claim against Defendants Atcherson, Coffeey, Phelps, Unknown Party 3 (C/O John Doe 2), Unknown Party 4 (Nurse Jane Doe 2), and Unknown Party 5 (Doctor John Doe 3).   Defendant Atcherson, the former warden who merely reviewed and signed off on the denial of Plaintiff's request for protective custody, lacks sufficient personal involvement in a constitutional deprivation to warrant inclusion in this lawsuit.  The doctrine of *respondeat superior* is not applicable to § 1983 actions.  *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).  Plaintiff, like many other inmates, seems to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems.  That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's."  *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).  *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).  Plaintiff has failed to allege sufficient facts which demonstrate that Defendant Atcherson is "personally responsible for the deprivation of a constitutional right."  *Id.*  Accordingly, Defendant Atcherson shall be dismissed from this action without prejudice.

5

Likewise, Plaintiff has failed to demonstrate that Defendants Coffeey, Phelps, or Unknown Party 3 (C/O John Doe 2) had any actual personal involvement in a constitutional deprivation. Plaintiff merely suspects that Defendant Coffeey stole Plaintiff's toothbrush and planted it on his cellmate. Similarly, Plaintiff speculates that Defendant Phelps confiscated evidence and "tried to catch [Plaintiff] in a lie." Finally, Plaintiff alleges that Unknown Party 3 refused to accept evidence of the attacks. Without more, Plaintiff simply has not pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants Coffeey, Phelps, and Unknown Party 3 (C/O John Doe 2) shall be dismissed from this action without prejudice.

Finally, Unknown Party 4 (Nurse Jane Doe 2) and Unknown Party 5 (Doctor John Doe 3) shall also be dismissed. Plaintiff claims that they demonstrated deliberate indifference to his serious medical need, when Unknown Party 4 (Nurse Jane Doe 2) noted that his stab wound was scabbed over and, rather than cleaning it, applied antibiotic cream and a band-aid. Plaintiff names Unknown Party 5 (Doctor John Doe 3) in this lawsuit for the same reason. He named these individuals before he even submitted a sick call request to be seen regarding this complaint. Not only is this claim asserted prematurely, but these actions do not give rise to a constitutional deprivation. Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."

*Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Accordingly, Unknown Party 4 (Nurse Jane Doe 2) and Unknown Party 5 (Doctor John Doe 3) shall also be dismissed without prejudice.

Plaintiff's Fourth Amendment claim (Count 2) shall also be dismissed, to the extent that it is based on an unlawful search and seizure of his property. Plaintiff's speculation regarding the impropriety of the "shake-down" (i.e., cell search) and his bald assertions about the whereabouts of evidence related to this lawsuit simply do not support a Fourth Amendment claim. Accordingly, Count 2 is dismissed without prejudice.

Plaintiff's Fourteenth Amendment claim (Count 3) shall also be dismissed. Plaintiff apparently raises a Fourteenth Amendment claim to address the prison's mishandling of his grievances. However, the failure to consider or respond to a grievance, as well as improper handling of grievances, does not implicate any constitutional right. Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process may be relevant in the event that a defendant raises a challenge to Plaintiff's right to maintain a § 1983 suit over the substantive matters raised in the grievances. Nonetheless, a defendant's action or inaction in handling Plaintiff's grievances does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). For these reasons, Count 3 is dismissed without prejudice.

**Pending Motion**

Plaintiff has also filed a motion to proceed in forma pauperis (Doc. 3). Along with this motion, Plaintiff submitted an affidavit stating that he has no employment, has received no income for the last twelve months beyond his state stipend, and has no assets. Plaintiff does receive regular monetary gifts from his mother. Plaintiff has not tendered an updated certified copy of his inmate trust fund account statement from all facilities where he has been incarcerated for the past six months. The Court has requested a trust fund statement for the six-month period immediately preceding the filing of this case from Pontiac Correctional Center, but to date has not received information sufficient to determine the amount of Plaintiff's initial partial payment. Based on Plaintiff's affidavit of indigence, the Court concludes that he is unable to pay in full the $350.00 filing fee in this case at this time, and therefore it is appropriate to permit him to proceed IFP in this case without full prepayment of the fee. At such time as the Court receives from the institution's Trust Fund Officer the certified copy of Plaintiff's trust fund account statement as requested, the Court will enter an order authorizing the Trust Fund Officer to deduct from Plaintiff's trust fund account the initial partial filing fee, and to forward the initial partial filing fee to the Clerk of Court. The order shall also direct subsequent payments to be made pursuant to § 1915 until the filing fee is paid in full. To conclude, Plaintiff's motion to proceed IFP in this case (Doc. 3) is **GRANTED**. The Clerk of Court is directed to send a copy of this Order to Plaintiff and to the Trust Fund Officer at Pontiac Correctional Center.

**Temporary Restraining Order**

Plaintiff filed a separate motion for TRO and preliminary injunction (Doc. 2). Without offering an opinion as to the ultimate merits of the motion, the Court's preliminary review dictates that Plaintiff's request for injunctive relief deserves prompt consideration.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's

motion for TRO and preliminary injunctive relief (Doc. 2) is hereby **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for an evidentiary hearing and issuance of a report and recommendation. Personal service on the Defendants shall be ordered. The period for filing any objections to Judge Frazier's report and recommendation shall not exceed **14 days** from the date of the report. Judge Frazier shall set an evidentiary hearing as soon as practicable, in light of the time necessary to effect service of summons and for receipt of the defendants' responses to the motion for injunctive relief. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Frazier.

**Disposition**

COUNTS 2 and 3 are **DISMISSED** without prejudice.

**DEFENDANTS ATCHERSON, COFFEEY, PHELPS, UNKNOWN PARTY 3 (C/O JOHN DOE 2), UNKNOWN PARTY 4 (NURSE JANE DOE 2),** and **UNKNOWN PARTY 5 (DOCTOR JOHN DOE 3)** are **DISMISSED** from this action without prejudice.

As to **COUNT 1**, the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **HERRINGTON, COWAN, LAURANCE, GODINEZ, ANDERSON, DUNN, JOY, GETZ, MULHOLLAND, HENRICH, ANTHONY, UNKNOWN PARTY 1 (JANE DOE 1),** and **UNKNOWN PARTY 2 (JOHN DOE 1)**. The Clerk shall issue the completed summons, and prepare a service packet for each defendant consisting of: the completed summons, the completed form USM-285, a copy of the complaint (Doc. 1), and this Memorandum and Order. The Clerk shall deliver the service packets for each defendant to the United States Marshal Service for personal service on each defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order,** the United States Marshals Service **SHALL personally serve** upon Defendants **HERRINGTON, COWAN, LAURANCE, GODINEZ, ANDERSON, DUNN, JOY, GETZ, MULHOLLAND, HENRICH, ANTHONY, UNKNOWN PARTY 1 (JANE DOE 1),** and **UNKNOWN PARTY 2 (JOHN DOE 1)** the service packets containing the summons, form USM-285, a copy of the complaint (Doc. 1), and this Memorandum and Order.  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.  The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for injunctive relief.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  April 2, 2013**

                                                                                          s/J. Phil Gilbert
                                                                                          **U.S. District Judge**